No. 40,850

O. FLORINE WORDEN, *Appellee*, v. UNION GAS SYSTEM, INC., THE SKELLY OIL COMPANY, MODERN BUILDERS, INC., and CHARLES P. TRAGER, *Appellants.*

(324 P. 2d 501)

Opinion filed April 12, 1958.

*Howard E. Payne,* of Olathe, argued the cause, and *Howard T. Payne,* of Olathe, and *Blake A. Williamson, James K. Cubbison, Lee Vaughan, Donald A. Hardy* and *A. C. Cooke,* all of Kansas City, were with him on the briefs for the appellant Union Gas System, Inc.

*John J. Alder,* of Kansas City, argued the cause, and *Harley V. Haskin,* of Olathe, was with him on the brief for the appellee.

The opinion of the court was delivered by

WERTZ, J.: This appeal raises the question of the sufficiency of the petition to state a cause of action based on the doctrine of *res ipsa loquitur.* The trial court overruled demurrers to the amended petition by each of the four defendants. This appeal is by defendant Union Gas System, Inc.

Plaintiff (appellee) is the owner of a private dwelling in Olathe. Defendant (appellant) Union Gas owns and maintains underground gas service lines along the alley north of and adjacent to plaintiff's premises. Across the alley, on premises known as the Snepp property, The Skelly Oil Company, Modern Builders, Inc., and Charles P. Trager were engaged in excavation and other activities for the construction of a building. On October 31, 1955, plaintiff's house was filled with gas or fumes which suddenly and violently exploded, causing fire and other destruction to the house. Plaintiff brought this action against Union Gas System, Inc., The Skelly Oil Company, Modern Builders, Inc., and Charles P. Trager, alleging that the gas or fumes escaped or leaked from an opening in the pipe line maintained by Union Gas at a point near or on the premises where the other defendants had been excavating, removing trees and driving their heavy equipment.

Plaintiff alleged that the gas came into her house without any fault or negligence on her part; that it came from premises exclusively and solely within the management, possession and control of each and all of the defendants; and that the escape of fumes was an occurrence which would not have taken place except for some negligence of the defendants. She further alleged that the explosion and damages were the direct and proximate result of some negligent acts or omissions of the defendants; that she did not know and could not allege the specific acts or omissions of the defendants; and that the facts were peculiarly and exclusively within the knowledge of the defendants.

Inasmuch as each of the four defendants filed a separate demurrer to the amended petition on the ground that it failed to state facts sufficient to constitute a cause of action, a copy thereof, with formal parts omitted, is appended hereto. Each of the demurrers was overruled and from that order Union Gas brings this appeal.

Defendant presents two arguments here. First, it contends that plaintiff did not plead that the instrumentality complained of was destroyed or was inaccessible for inspection by the plaintiff to ascertain what defect existed in it, and that such allegation is essential to invoke the doctrine of *res ipsa loquitur* on which plaintiff seeks to rely. *Johnson v. Latimer,* 180 Kan. 720, 308 P. 2d 65 is cited in support of this contention.

Defendant next maintains that the doctrine cannot be invoked where there are several causes which might have produced damage, some of which were under the control of persons other than Union Gas, and that here plaintiff's allegation of the operations of Skelly Oil, Modern Builders and Trager removes the availability of the doctrine as to Union Gas.

The only question before us is the sufficiency of the petition to state a cause of action based on *res ipsa loquitur*. This court has repeatedly held that the doctrine is a rule of evidence, rather than one of substantive law, and that cases dealing with the question of sufficiency of proof are authority on the question of pleading. Therefore, the petition must be held sufficient if it contains allegations of fact which, if proved, would warrant application of the doctrine. (*Lamb v. Hartford Accident & Indemnity Co.,* 180 Kan. 157, 300 P. 2d 387; *Waddell v. Woods,* 158 Kan. 469, 148 P. 2d 1016;

*Starks Food Markets, Inc., v. El Dorado Refining Co.*, 156 Kan. 577, 134 P. 2d 1102, and cases cited therein.)

It is hornbook law that negligence is never presumed but must be established by proof; that the occurrence of injury does not establish liability; and that where direct proof is lacking circumstantial evidence may be used to prove negligence. One type of circumstantial evidence is that which courts have given the name of *res ipsa loquitur*. Whether the doctrine, which means simply "the thing speaks for itself," is to be applied depends on the character of the accident and the circumstances under which it occurred. We stated in *Lamb v. Hartford Accident & Indemnity Co.*, supra, that when a thing which causes injury without fault of the injured person is shown to be under the management and control of the defendant or his servants, and the injury is such as in the ordinary course of things does not occur if the one having such management or control uses proper care, it asserts reasonable evidence in the absence of an explanation, the injury arose from the defendant's want of care. (*Mayes v. Kansas City Power & Light Co.*, 121 Kan. 648, 650, 249 Pac. 599; *Stroud v. Sinclair Refining Co.*, 144 Kan. 74, 76, 58 P. 2d 77; *Starks Food Markets, Inc., v. El Dorado Refining Co.*, supra, 582; *Waddell v. Woods*, supra; *Sipe v. Helgerson*, 159 Kan. 290, 291, 153 P. 2d 934; *Waterbury v. Riss & Company*, 169 Kan. 271, 288, 219 P. 2d 673; *Nichols v. Nold*, 174 Kan. 613, 621, 258 P. 2d 317, 38 A. L. R. 2d 887; *Waddle v. Brodbeck*, 176 Kan. 583, 272 P. 2d 1066; Shain, Res Ipsa Loquitur, p. 1; Prosser on Torts § 43 [1941].) It has been stated repeatedly that the force and justice of the doctrine stem from the consideration that the defendant in control of the instrumentality has it within his power to produce evidence of the cause of the injury, while the plaintiff is without such knowledge and must therefore rely on proof of the circumstances. (*Bradley v. Conway Springs Bottling Co.*, 154 Kan. 282, 118 P. 2d 601; Wigmore on Evidence § 2509 [3d ed.].)

Measuring the allegations of the petition in the instant case against the three stated requirements for invocation of the doctrine, it is clear that the petition is sufficient to establish a *prima facie* case based on *res ipsa loquitur*. Plaintiff alleged lack of fault or contributory negligence on her part; she alleged that exclusive control of all instrumentalities which could have produced the damages was at all times in the defendants, and she plead circumstances which, if proved, indicate that the accident would not have oc-

curred absent negligence on the part of those in control. The alleged circumstances of plaintiff's damage, if proved, warrant application of the doctrine of *res ipsa loquitur.*

*Johnson v. Latimer,* supra, upon which defendant relies, is not applicable here. Clearly, the instrumentalities alleged to have produced the damage in the instant case were at no time in the possession, management or control of the plaintiff, nor were they in any way accessible to her.

Similarly, defendant's second contention is without merit. It is well settled in this state that the doctrine of *res ipsa loquitur* is applicable as against multiple defendants. (*Nichols v. Nold,* 174 Kan. 613, 258 P. 2d 317, 38 A. L. R. 2d 887; *Waterbury v. Riss & Company,* supra; *Woods v. Kansas City, K. V. & W. Rld. Co.,* 134 Kan. 755, 8 P. 2d 404.) In *Nichols v. Nold,* supra, plaintiff, who was injured by the explosion of a bottle of Pepsi-Cola, sued the manufacturer, distributor and retailer of the drink, relying on the doctrine of *res ipsa loquitur* to establish negligence. This court held the doctrine properly invoked against all the defendants, declaring:

"The fact that plaintiff did not know which one of the defendants was guilty of the negligence which was the cause of the accident . . . was the reason for naming all of them as parties defendant." (l. c. 620.)

(See also 65 C. J. S. Negligence § 220 (8), p. 1014.) Similarly in this case, if plaintiff's allegations are proved, she is entitled to redress. If the allegations are proved, it is apparent that the damage could have resulted from a defect in the gas line operated and maintained by Union Gas, or from negligence in the operations of the other defendants in the area of the gas line, or from the negligence of both. It would be beyond the ability of the plaintiff to establish which of these possibilities was in fact the cause of the accident. Since defendants were in exclusive control of all the instrumentalities which could have caused the accident, it was proper to invoke the doctrine of *res ipsa loquitur* against all of them.

Finally, it must be noted that the issues have not been joined, that this appeal is from the overruling of a demurrer and goes solely to the sufficiency of the amended petition. We determine only that plaintiff's petition is sufficient and that the benefits of *res ipsa loquitur* pleading cannot be removed from her. When the issues are joined and plaintiff establishes the allegations of her petition by evidence, it will be incumbent upon this defendant to demonstrate

that it was free from negligence in the operation of its gas line. It follows that the judgment of the trial court is affirmed.

It is so ordered.

This case was decided and the opinion written and concurred in by HALL, J., prior to his resignation from the court.

JACKSON, J., not participating.

---

## APPENDIX

"Comes now the plaintiff and for her cause of action against the defendants, states:

"1. That plaintiff's post office address and residence is 2052 Jamaica Street, Aurora, Colorado;

"2. That defendant Union Gas System, Inc., is a corporation organized and existing under the laws of Kansas with its main office at 122 West Myrtle Street, Independence, Kansas, and is engaged in the business generally of purveying, selling, and supplying natural gas and other products, for profit, to its various customers in private homes, and business establishments, in Kansas, including the City of Olathe;

"3. That defendant The Skelly Oil Company is a corporation organized and existing under the laws of Delaware, duly authorized to do business in Kansas, with its agent for service of process at Topeka, Kansas, and is engaged generally in the business of selling for profit to the general public gasoline, oil, grease and petroleum products, for use in motor vehicles, and for that purpose it provides filling stations, and other places for vending its products;

"4. That defendant Modern Builders, Inc., is a corporation duly organized and existing under the laws of the State of Kansas, and it is engaged in the general business of building homes and business establishments for profit, including the excavation of the earth, and the erection of structures;

"5. That defendant Charles P. Trager, is a citizen and resident of the state of Kansas at Route No. 3, Olathe, and is engaged generally in the business of doing excavation and construction work with machinery;

"6. That at all times herein mentioned, defendant Union Gas System, Inc., owned, used, serviced, and maintained main and

subsidiary gas lines for the purpose of transporting or conveying gas to its customers, and laid the lines beneath the surface of the earth, under private property, or public ways, and from said main lines said defendant made connections to private and commercial users or customers, to homes and business establishments. On October 31, 1955, and for a long time prior, said Union Gas System, Inc., owned, used, serviced and maintained such gas lines along the alley north of and adjacent to the premises of the plaintiff herein set out, and in the area north of and adjacent to said alley on premises where the other defendants herein were engaged in excavation and building activities as hereinafter set out;

"7. That on and prior to October 31, 1955, defendants The Skelly Oil Company and Modern Builders, Inc., and Charles P. Trager were engaged in excavation and building activities upon premises located adjacent to and at the southwest corner of the public intersection of Kansas Avenue and Loula Street in Olathe, Kansas, at a place commonly known as the Snepp property, and for that purpose drove heavy equipment over the earth, removed trees, and excavated and dug into the ground for foundations for a building, or for tanks, or utilities or other installations;

"8. That at all times referred to herein, plaintiff was the owner of the premises, including a private dwelling thereon, legally described as Lots 11 and 12, Block 60, City of Olathe, Kansas, said premises being located on the south side of an east-west alley, immediately south of and adjacent to the premises on which defendants The Skelly Oil Company and Modern Builders, Inc., and Charles P. Trager were working or operating;

"9. That at approximately 11:30 o'clock P. M., on or about October 31, 1955, the aforementioned private dwelling owned by plaintiff, but occupied at that time by one holding possession under plaintiff, and in the absence of plaintiff, was so filled with gas and gaseous vapor or fumes, which suddenly, forcefully and violently exploded, that the dwelling house was rent asunder, causing fire and other destruction to the damage of plaintiff, as set out hereinafter;

"10. That said gas and gaseous vapor or fumes, which came into the house of plaintiff, escaped or leaked from an opening in an underground pipe line owned, used and maintained by defendant Union Gas System, Inc., and extending from a main or subsidiary line on the north side of plaintiff's house and adjacent to her

premises and from a point near or on the premises where defendants The Skelly Oil Company, Modern Builders, Inc., and Charles P. Trager were or had recently been working and operating; that said gas, fumes and vapors escaped and came into the premises and house owned by plaintiff through no fault or negligent acts or omissions of plaintiff;

"11. That the gas, fumes and vapors came directly from the premises which were exclusively and solely within the management, possession and control of each and all the defendants in their respective work, maintenance, service or use; and that the condition and repair of said underground gas lines, the excavation, removal of trees and other operations upon the adjoining or adjacent property where defendants were jointly and severally working and operating are all facts peculiarly and exclusively within the knowledge of defendants and each of them, and are not within the knowledge of plaintiff;

"12. That plaintiff does not know and does not attempt to allege or describe specific acts or omissions of negligence of which the defendants may have been guilty, and that may have been the proximate cause of the damages to plaintiff; but plaintiff states that escape of gaseous vapors and fumes, the entrance of said fumes into plaintiff's residence and the explosion thereof on the premises resulting in the damage to plaintiff, was an occurrence which would not have taken place, except for some negligent acts or omissions of defendants in the use, maintenance, service or work on the premises by defendants near or adjacent to the premises of plaintiff which work, maintenance or service in connection with the gas line, caused it to leak, or permitted the escape of large and dangerous quantities of such gas, fumes and vapors;

"13. That such explosion and the damages to plaintiff were the direct and proximate result of some negligent acts or omissions of defendants while they were in the exclusive possession and control of said premises on which they were working, and over the gas lines upon said premises, the facts of which are peculiarly within the superior knowledge of defendants and each of them;

"14. That as a result of the negligence of defendants, and each of them, acting individually, or through their employees, agents, and servants, the dwelling home owned by plaintiff, as set out herein, rented to another, and the contents of said home, were thereby damaged, bent, broken, destroyed, ruined, and rendered

useless, and beyond repair or salvage; that a reasonable market value of said house or home, separate and apart from the value of the real estate or land upon which it was situated, immediately before said explosion and damage was approximately $10,000, and the reasonable market value of said home or house aside from the land or real estate immediately after the explosion or damage was worth nothing; the reasonable market value of personal property damaged and destroyed in said explosion immediately prior to said explosion was $150, and the reasonable market value of said property immediately following said explosion was nothing.

"Wherefore, plaintiff demands judgment against the defendants, and each of them, in the sum of Ten Thousand One Hundred Fifty Dollars ($10,150.00) and costs."

SCHROEDER, J., dissenting: It is impossible for me to concur in the majority opinion, and in view of the importance of the decision I feel obligated to fully set forth the reasons.

It is unnecessary to restate the basic rules concerning the doctrine of *res ipsa loquitur* which are correctly set forth in the court's opinion and amply supported by authorities therein cited.

The difficulty courts often encounter is the application of the doctrine to the situation disclosed by the facts and circumstances alleged in the petition. This was recognized in *Lamb v. Hartford Accident & Indemnity Co.*, 180 Kan. 157, 161, 300 P. 2d 387.

Loose language used in cases heretofore decided by this court has brought about a critical analysis of the Kansas cases in 3 J. B. K. 158, 159 and 160. In an effort to analyze the basic requirements for the application of the doctrine, which has repeatedly been held to be a *rule of evidence* rather than one of substantive law, resort is made to the work of John Henry Wigmore, one of the foremost authorities on *evidence* in this country. In Wigmore on the subject of evidence the doctrine of *res ipsa loquitur* has been classified under *presumptions* in the *law of negligence*. In IX Wigmore, Evidence, Third Edition, § 2509, under the heading "Negligence and Accident: (3) Defective Machines, Vehicles, and Apparatus" the following appears:

"(A) With the vast increase, in modern times, of the use of powerful machinery, harmless in normal operation, but capable of doing serious human injury if not constructed or managed in a specific mode, the question came to be increasingly common whether the fact of the occurrence of an injury (unfortunately now termed 'accident', by inveterate misuse) is to be regarded

as raising a *presumption of culpability* on the part of the owner or the manager of the apparatus. 'Res ipsa loquitur' is the phrase appealed. to as symbolizing the argument for such a presumption.

". . . But whether the rule creates a full presumption, or merely satisfies the plaintiff's duty of producing evidence sufficient to go to the jury, is not always made clear in the rulings:

"What the final accepted shape of the rule will be can hardly be predicted. But the following considerations ought to limit it: (1) The apparatus must be such that in the ordinary instance no injurious operation is to be expected unless from a careless construction, inspection, or user; (2) Both inspection and user must have been at the time of the injury in the control of the party charged; (3) The injurious occurrence or condition must have happened irrespective of any voluntary action at the time by the party injured. It may be added that the particular force and justice of the rule, regarded as a presumption throwing upon the party charged the duty of producing evidence, consists in the circumstance that the chief evidence of the true cause, whether culpable or innocent, is practically accessible to him but inaccessible to the injured person." (pp. 377 through 384.)

The importance of the foregoing statement is not that it represents the present state of Kansas law on the doctrine of *res ipsa loquitur*, but that it indicates the basic principles which underlie the doctrine throughout this country. Important is the fact that an *instrumentality* exist which meets all of the necessary conditions giving rise to the presumption.

This court has repeatedly recognized an essential element to the application of the doctrine of *res ipsa loquitur* is that it must appear the *instrumentality which produced or caused the injury complained of* was, at the time of the injury, under the *sole and exclusive control and management of the defendant*. If it appear that two or more instrumentalities, one only of which was under the defendants' control, contributed to the injury, the doctrine should not be applied. (*Starks Food Markets, Inc., v. El Dorado Refining Co.,* 156 Kan. 577, 134 P. 2d 1102, and cases cited therein; *Waddell v. Woods,* 158 Kan. 469, 148 P. 2d 1016; *Woosley v. Erickson,* 179 Kan. 794, 298 P. 2d 268; and *Emigh v. Andrews,* 164 Kan. 732, 191 P. 2d 901.)

Each of the foregoing cases has generously treated the doctrine of *res ipsa loquitur* and its limitations. In my opinion these cases control the facts presented by the plaintiff's amended petition, and without unduly burdening this opinion by repeating what has there been said specific reference is made thereto.

Where a plaintiff seeks to take advantage of the doctrine of *res ipsa loquitur*, it is incumbent upon him to show fully a situation where it is applicable, otherwise there may be an attempt to shift

the burden of proof in negligence cases by merely asserting the doctrine itself. (*Johnson v. Latimer,* 180 Kan. 720, 308 P. 2d 65.)

With reference to the doctrine generally, it has been said that it is not a rigid or arbitrary doctrine to be mechanically applied, but a rule to be cautiously applied, dependent upon the circumstances of the case. (*Waddell v. Woods,* supra; *Lamb v. Hartford Accident & Indemnity Co.,* supra; *Pierce v. Schroeder,* 171 Kan. 259, 232 P. 2d 460; 38 Am. Jur., Negligence, § 303; and 65 C. J. S., Negligence, § 220 [6].)

Although the doctrine of *res ipsa loquitur* is a rule of evidence and not of substantive law, it has been held that the elements pertaining to the application of the doctrine are properly applied in determining the sufficiency of a petition which seeks to invoke the doctrine. (*Starks Food Markets, Inc., v. El Dorado Refining Co.,* supra; and *Waddell v. Woods,* supra.) Reference is made to the amended petition which is set forth as an "Appendix" to the court's opinion.

It must be conceded that this court has held the doctrine of *res ipsa loquitur* applicable under proper circumstances to cases involving plural defendants. (*Nichols v. Nold,* 174 Kan. 613, 258 P. 2d 317.) In that opinion previous decisions of this court were cited where plural defendants were involved. (*Woods v. Kansas City, K. V. & W. Rld. Co.,* 134 Kan. 755, 8 P. 2d 404; *Ratliffe v. Wesley Hospital,* 135 Kan. 306, 10 P. 2d 859; *Starks Food Markets, Inc., v. El Dorado Refining Co.,* supra; and *Waterbury v. Riss & Company,* 169 Kan. 271, 219 P. 2d 673.) In each of these cases there was held to be a unanimity of interest in the instrumentality among the several defendants, successive and exclusive control, or a legal relationship among the several defendants which placed them in constructive control of the instrumentality. Plaintiff's amended petition herein contains no allegations whatever which would lay a predicate for the application of the doctrine of *res ipsa loquitur* to plural defendants involved herein. Insofar as the amended petition discloses there is no relationship whatever between the defendant Union Gas and the other defendants. It would be a bold assumption, indeed, to hold that there was privity of contract between the defendants other than Union Gas on the allegations of the amended petition herein.

The rule is stated in 38 Am. Jur., Negligence, § 303, as follows:

"The res ipsa loquitur rule does not apply where it appears that the accident was due to a cause beyond the control of the defendant, such as the presence

of vis major or the tortious act of a stranger. Nor does it apply where an unexplained accident may be attributable to one of several causes, for some of which the defendant is not responsible. It should not be allowed to apply where, on proof of the occurrence, without more, the matter still rests on conjecture alone or the accident is just as reasonably attributable to other causes as to negligence. . . ." (p. 1000.)

In 65 C. J. S., Negligence, § 220(8), it is stated:

"Where either one of two defendants wholly independent of each other may be responsible for the injury complained of, the rule of res ipsa loquitur, in accordance with the preceding principles, cannot be applied. However, the doctrine may be availed of as against plural defendants who were, under the circumstances involved, joint tort-feasors. . . ." (p. 1014.)

A general statement as to the doctrine of *res ipsa loquitur* consistently applied by this court (see, *Stark Food Markets, Inc., v. El Dorado Refining Co.*, supra; and *Waddle v. Brodbeck*, 176 Kan. 583, 587, 272 P. 2d 1066) is set forth in *Mayes v. Kansas City Power & Light Co.*, 121 Kan. 648, 249 Pac. 599:

". . . Literally translated the phrase means 'the thing itself speaks,' or 'the thing speaks for itself.' It is a term used in a limited class of negligence cases, referring to the method of proof of general negligence (as distinct from proof of specific negligent acts or omissions), by proving the injury, together with the accompanying circumstances, from which it may be inferred, and is reasonable to infer, that the casualty happened only because of some negligence of defendant. In actions for damages because of defendant's negligence, the general rule is, of course, that the negligence of defendant is never presumed, but must be established by proof. The cases in which *res ipsa loquitur* is applicable are not exceptions to the general rule. 'It does not dispense with proof of negligence in personal-injury cases.' (*Root v. Packing Co.*, 88 Kan. 413, 424, 129 Pac. 147.) Rather, in cases in which the phrase is applicable, proof of negligence is made, if at all, by circumstantial evidence; that is, the proof of the casualty and of the surrounding circumstances are such as to leave no reasonable conclusion to be drawn therefrom other than that the casualty happened because of the negligence of defendant . . ." (pp. 650, 651.)

In *Stroud v. Sinclair Refining Co.*, 144 Kan. 74, 58 P. 2d 77, this court gave the definition of the phrase *res ipsa loquitur* in like tenor and went on to say:

". . . Where the accident or occurrence out of which the injury arises is such that direct evidence of negligence is not available, and the circumstances are such that the accident would not have occurred except the defendant be at fault, the circumstances are permitted to be shown as making a prima facie case. But such a showing is not sufficient where the evidence offered *suggests with equal force that the injuries might have resulted without fault of the defendant.* . . ." (p. 76.) (Emphasis added.)

In *Travelers Ins. Co. v. Hulme,* 168 Kan. 483, 213 P. 2d 645, the proximate cause of an injury alleged under the doctrine of *res ipsa loquitur* is explained and clarified. This court there stated the rule as follows:

". . . The doctrine has no application to proximate cause—or perhaps we should say no application to the initial fact, or the fundamental or foundation fact which caused the injury or damage. The doctrine will permit an inference or presumption that the known act—or foundation fact—which produced the injury (proximate cause) was a negligent act, *but it will not permit such an inference or presumption as to just what foundation fact did produce the injury*—or, in other words, as to what act was the initial cause of the damage. Thus the doctrine cannot be applied where the thing which actually caused the injury or damage is unknown; but when it is known and disclosed and relied upon as the basis of the damage or injury, the application of the doctrine of *res ipsa loquitur* will infer negligence in the doing of the *thing,* or in the commission of the *act* (45 C. J. 1212; *Emigh v. Andrews,* supra, and cases cited therein at page 735). We said in the last cited case that the *inference arises only from the foundation fact after it is known and established, and cannot act to supply a foundation fact."* (p. 486.) (Emphasis added.)

(See, 65 C. J. S., Negligence, § 220[4], to the same effect.)

The plaintiff in her brief, in placing a construction on her own amended petition in reliance upon the Hulme case, states that the foundation facts clearly established show:

". . . that appellant, Union Gas, owned, used, serviced and maintained an underground gas system in property immediately adjacent to plaintiff's building, that the gas system was underground, filled with gas and gaseous vapors or fumes which escaped or leaked from an underground opening of said gas lines, owned, used and maintained by defendant Union Gas, which lines extended into plaintiff's house from the adjacent premises and *from a point where other defendants were working or had been recently working* and went directly from those premises into said house; *that the use and maintenance of said lines were exclusive in Union Gas as well as the condition and repair of the underground gas lines,* that said gas fumes and vapors came into the house of the plaintiff through 'no fault or negligent acts or omissions of plaintiff' and that plaintiff does not know and does not attempt to allege the specific acts or omissions of negligence of *defendants* but that the escape of said gas and fumes into plaintiff's house and explosion on the plaintiff's premises was an occurrence which would not have taken place *except for the negligent acts of defendants, including appellant, in the use, maintenance and service of the gas line which caused it to leak, or permitted the escape of large and dangerous quantities of such gas,* and *that the negligence was the direct and proximate cause of said damages,* the facts of which negligence was peculiarly within the superior knowledge of *defendants,* including Union Gas. . . ."" (Emphasis added.)

This may be summarized to say that the cause of the injury is alleged to be an opening or leak in the gas line (the instrumentality), as a result of the maintenance of the gas line by the defendant Union Gas *or* as a result of the work around it in the excavation, removal of trees or other operations of defendants other than Union Gas. (In fact, plaintiff has so summarized it in her brief answering the defendant, Charles P. Trager, whose demurrer to the amended petition herein is treated in Case No. 40,882.)

The plaintiff's conception of the doctrine of *res ipsa loquitur*, as it relates to the amended petition is further clarified by the following remark from her brief:

"Even against the allegation of appellant that the instrumentality (gas pipe line) was not destroyed and was subject to inspection, *plaintiff would not have been able to tell what caused the gas line to leak*, whether it was poor maintenance, defective condition of the pipe, caused by wear and tear, which would have been the exclusive duty of appellant Union Gas, or whether it was the operations upon said property by the other defendants. However, in view of the highly dangerous, explosive and harmful character of escaping gas, it is certainly a fair, logical, and reasonable conclusion that gas does not escape and come into houses of people without *negligence of someone*. The duties and control of said gas line by appellant Union Gas creates a fair and reasonable inference that said appellant was negligent." (Emphasis added.)

Conceivably, the plaintiff could have alleged a good cause of action under the doctrine of *res ipsa loquitur* against Union Gas alone, but in my opinion the effort to include the other defendants by showing that it was possibly their negligence which caused plaintiff's injury makes the amended petition fatally defective.

The plaintiff contends that:

"Even if it be held that Union Gas did not excavate, or dig trees, it did have exclusive possession and control of the lines for use and maintenance, while co-defendants Skelly Oil, Modern Builders, and Trager, having no duty toward maintenance of the line, nevertheless were joint actors, tort-feasors, whose alleged negligence can reasonably be inferred from the location of the work, and the circumstances of the escaping gas and resultant explosion and damage."

In my opinion the argument is untenable that Union Gas is a joint tort-feasor with the other defendants since no such relationship can be inferred from the allegations of the amended petition.

As previously stated, the general rule is that the doctrine of *res ipsa loquitur* is inapplicable unless the management and control of the injuring agency (instrumentality) were *exclusively* in the person charged at the time of the injury, or, as modified by this court

where the circumstances require, at the time of the negligence. (*Nichols v. Nold*, supra; and *Lamb v. Hartford Accident & Indemnity Co.*, supra.)

In 65 C. J. S., Negligence, § 220.(8), p. 1018, it is said:

"The term 'exclusive,' when used to define the quantity of the possession, control, or management by defendant of the injurious agency is not employed in the sense that such possession, control, or management must be several and the defendant singular and never plural. What is meant by the term is that the possession, control, or management must be exclusive against all who do not have a concurrent joint possession, control, or management in fact, either as joint actors, possessors, or users in respect of the injurious agency, or by way of representation."

To sustain plaintiff's position, in view of her admissions, it would be necessary to say that Union Gas was a joint user of the gas line (the instrumentality) with the defendants other than Union Gas to make them joint tort-feasors. To so construe the amended petition would require the inference that "user" with reference to the defendants other than Union Gas was equivalent to "mis-use," tortious, negligent acts pertaining to the instrumentality. (This is the precise argument advanced by plaintiff in her answering brief to the defendant Skelly Oil Company, Case No. 40,856, on plaintiff's amended petition herein, where plaintiff said ". . . Counsel [for Skelly Oil] has only asserted that Skelly Oil did not have 'control' of the pipeline. As already set out, 'control' does not mean intentional use of it, but perhaps 'mis-use,' tortious, negligent acts pertaining to it. At least, *prima facie*.")

Thus, we have an attempt to construe the intervention of a negligent act by third persons as an act jointly committed with Union Gas to circumvent the law in this state under the doctrine of *res ipsa loquitur*.

Another attempt to circumvent the doctrine of *res ipsa loquitur* established by the decisions of this court is made by the plaintiff in quoting from *Sweeney v. Erving*, 228 U. S. 233, 240, 33 S. Ct. 416, 57 L. Ed. 815, as follows:

". . . *res ipsa loquitur* means [1] that the facts of the occurrence *warrant the inference of negligence*, not that they compel such an inference; [2] that they furnish *circumstantial evidence of negligence* where direct evidence of it *may be lacking*, but it is evidence to be weighed, not necessarily to be accepted as sufficient; [3] that they *call for an explanation or rebuttal*, not necessarily that they require it; [4] that they *make a case to be decided by the jury*, not that they forestall the verdict . . ." (Emphasis added.)

It is true that the foregoing statement is made in the *Sweeney* case but it is isolated and quoted apart from context. The re-mainder of the paragraph following the quoted portion reads: "*Res ipsa loquitur, where it applies, does not convert the defendant's general issue into an affirmative defense.* When all the evidence is in, the question for the jury is, whether the preponderance is with the plaintiff." (Emphasis added.) The *Sweeney* case had pre-viously set forth the recognized standards for the application of the doctrine of *res ipsa loquitur* and the omitted sentence indicating that *res ipsa loquitur, "where it applies"* had reference to the re-quirements of the doctrine previously stated in the opinion. The quoted portion was given only with reference to the burden of proof which shifted to the defendant after the presumption obtained.

In *Travelers Ins. Co. v. Hulme*, supra, it has been shown that where the foundation fact which caused the injury is conjectural the doctrine of *res ipsa loquitur* will not apply. Thus, in *Starks Food Markets, Inc., v. El Dorado Refining Co.*, supra, where it was sought to invoke the doctrine against plural defendants the court sustained demurrers to the plaintiff's petition and in support of their ruling stated:

". . . If on trial the facts alleged were all that were shown, the trier of the fact could only indulge in conjecture as to the cause of the fire. In such case the doctrine of *res ipsa loquitur* should not be applied." (p. 583.)

This court quoted the foregoing language with approval in *Truhlicka v. Beech Aircraft Corp.*, 162 Kan. 535, 178 P. 2d 252, and in *Emigh v. Andrews*, supra. If, on the trial of the instant case the facts alleged in the plaintiff's amended petition were all that was shown, the trier of the fact could only indulge in conjecture as to the cause of plaintiff's injury. There would be no way to determine which defendant was responsible.

If the plaintiff has sought by her amended petition to charge the defendant Union Gas or the other defendants herein with control of some instrumentality, other than the gas line, (refuted by the allegations of the amended petition itself, and not asserted by the plaintiff in her brief) which may have been the proximate cause of her alleged injury, the amended petition herein must fail, since it would then leave the trier of the fact to pure conjecture as to the base fact involved, to-wit: The instrumentality causing the injury. (*Starks Food Markets, Inc., v. El Dorado Refining Co.*, supra; *Waddell v. Woods*, supra; *Woosley v. Erickson*, supra; and *Emigh v. Andrews*, supra.)

It is submitted that when plaintiff's amended petition is viewed in the light of the rules of law above set forth, the trial court erred in overruling the demurrer of the defendant Union Gas to the plaintiff's amended petition.

In paragraph 13 of the plaintiff's amended petition plaintiff states in substance that the explosion and damages to the plaintiff's property were the direct and proximate result of some negligent acts or omissions of the *defendants* while they were in the exclusive possession and control of said premises, on which they were working, and over the gas lines upon said premises.

The defendant Union Gas was not working on the premises, and in paragraph 10 of the plaintiff's amended petition plaintiff states in substance that the gas was coming into plaintiff's house from an opening in the gas pipe line from a point *near or on the premises* where the defendants, the Skelly Oil Company, Modern Builders, Inc., and Charles P. Trager, were or had recently been working and operating.

Plaintiff further states in paragraph 7 of her amended petition that: ". . . on and prior to October 31, 1955, defendants The Skelly Oil Company and Modern Builders, Inc., and Charles P. Trager were engaged in excavation and building activities . . ." at "a place commonly known as the Snepp property, and for that purpose drove heavy equipment over the earth, removed trees, and excavated and dug into the ground for foundations for a building, or for tanks, or utilities or other installations;".

In paragraph 8 of the plaintiff's amended petition she alleges that she owned the premises directly south of the alley "adjacent to the premises on which defendants The Skelly Oil Company and Modern Builders, Inc., and Charles P. Trager were working or operating;".

In view of the above quoted portions of the plaintiff's amended petition, and from the reading of plaintiff's amended petition as a whole the plaintiff inferentially, and actually, alleges that the proximate and direct cause of the injury to the plaintiff probably was the intervention of the defendants other than Union Gas.

In my opinion the order of the trial court overruling the demurrer of the defendant Union Gas to the amended petition of the plaintiff should be reversed.

PARKER, C. J., and PRICE, J., concur in the foregoing dissenting opinion.